1
2
3
4

MARC APPLBAUM, ESQ., SBN# 222511
MIDWAY LAW FIRM APC
4275 Executive Square, Suite 200
La Jolla, CA 92037
Telephone: (877) 5-MIDWAY
Email: marc@midwaylawfirm.com

5
6

Attorneys for Plaintiff
Michael Mizrachi, Marina Mizrachi, and
Weedmayhem, Inc.

7

8       **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 | |
| 12 | Michael Mizrachi, Marina Mizrachi, Weedmayhem, Inc. |
| 13 | Plaintiffs, |
| 14 | vs. |
| 15 | Sardor Azimovich Abdullaev, Individually and dba Vivatex; Sarvar |
| 16 | Azimzhanovich Abdullaev; Ilgar Hajiyev; Xcentric Ventures, LLC an |
| 17 | Arizona LLC, dba badbusinessbureau.com dba |
| 18 | RipoffReport.com; ScamGuard.com; Does 1-50, Inclusive, |
| 19 | Defendants. |

Case Number:

**COMPLAINT FOR**:

I.   VIOLATIONS OF 47 USC § 230
II.  FRAUD-INTENTIONAL
     MISREPRESENTATION
III. DEFAMATION-LIBEL
IV.  DEFAMATION-LIBEL PER SE
V.   CASTING PLAINTIFFS IN A
     FALSE LIGHT
VI.  INTENTIONAL INTERFERENCE
     WITH PROSPECTIVE
     ECONOMIC ADVANTAGE
VII. INTENTIONAL INFLICTION OF
     EMOTIONAL DISTRESS
VIII.DECLARATORY JUDGMENT

***REQUEST FOR:***

•  TRO
•  Preliminary Injunction
•  Permanent Injunction
•  Punitive Damages

**DEMAND FOR JURY TRIAL**

-1-

## SUMMARY OF ACTION

Michael Mizrachi (herein referred to as "Mr. Mizrachi" and "Plaintiff") had an idea, a new way for the cannabis industry to conduct legal business globally as well as be regulated by the United States federal government.  Currently the cannabis industry is regulated by each individual state.  But Mr. Mizrachi saw a much bigger picture and desired to create a marketplace for legal sales of cannabis, paraphernalia, merchandise, education and a community.  His dream was to have a "one stop shop" for the users and the industry as a whole.  He could see if that happened then eventually the federal government would come on board.  Mr. Mizrachi formed a company and named it Weedmayhem, Inc. (herein referred to as "Weedmayhem")

Mr. Mizrachi for a number of years had been talking to potential investors.  This venture was very big and quite expensive.  In the beginning he used his personal funds; he did what he could do to get it off the ground.  By 2018 Mr. Mizrachi's good, personal friend, Ziyad Aboukloub (herein referred to as "Aboukloub") agreed to provide a significant amount of startup capital which was needed for the company, Weedmayhem.  Mr. Mizrachi was more than ecstatic, he was over the moon.

In September of 2018, Mr. Mizrachi met Sardor Azimovich Abdullaev (herein referred to as "Defendant Abdullaev").  They met because their children went to the same school and had play dates together.  Often times the two families would have barbeques together and the two men became friends.  It was only natural that they talked business and Mr. Mizrachi would talk about his exciting new business and the potential it had.  His enthusiasm was infectious and over the course of six plus months of hearing about the venture Defendant Abdullaev wanted to be involved.

-2-

Defendant Abdullaev enjoyed his time with Mr. Mizrachi. It was very exciting. Weedmayhem would be a revolutionary way of conducting business in the cannabis industry, the potential for income was limitless and the admiration from the cannabis community was overwhelming.

Defendant Abdullaev informed Mr. Mizrachi that his family was from Russia and runs a very successful textile factory in Kazakhstan named Vivatex. Defendant Abdullaev runs the family business here in the United States, named Sleep and Beyond in Fontana, California. With all his family's accomplishments, through very hard work, Defendant Abdullaev essentially gave it all up to be side by side, day and day out with Mr. Mizrachi. After being social friends for over eight months and hearing about the growth of Weedmayhem, Defendant Abdullaev just knew he had to be a part of this journey. He was completely taken back by Mr. Mizrachi's business acumen and did whatever it took to be part of Mr. Mizrachi's world.

After a while their personal and business relationship merged into one relationship, to a more personal one. Their relationship could be called a "bromance." Bromance is defined by the Urban Dictionary as, "*a bromance describes the complicated love and affection shared by two straight males*." He wanted to do anything he could for Mr. Mizrachi. He wanted to be a part of the dream but he also wanted to see Mr. Mizrachi happy and did everything in his power to make the dream a reality. As most all startups go, finances were a problem. Weedmayhem was no different. Aboukloub did not always fund the business as promised or as it often happened was late on his promise. Obviously this put Weedmayhem's everyday progress, its timeframe for launch in jeopardy.

By the beginning of 2019 Weedmayhem had over twenty different vendors/consultants it was paying to do the needed work in order to get the company up and running. It wasn't until approximately May or June of 2019 that

-3-

Defendant Abdullaev was helping Mr. Mizrachi on a day to day basis.  From the start, Mr. Mizrachi was abundantly clear with Defendant Abdullaev that it was okay for Defendant Abdullaev to help him but that his help was not budgeted for and therefore Mr. Mizrachi was not in a position at that time to pay for added personnel. Actually, Mr. Mizrachi was running tight on funds due to website changes. Defendant Abdullaev was fine with the arrangement and didn't expect anything different.

On April 7, 2019, Defendant Abdullaev by way of credit cards loaned Mr. Mizrachi $23,700.  Mr. Mizrachi appreciated the loan, he knew it was based on his friendship with Defendant Abdullaev and he did not want to abuse the relationship. His desire was to pay off the loan as soon as possible.

On May 15, 2019, Mr. Mizrachi showed up with a $10,000.00 check for Defendant Abdullaev.  Defendant Abdullaev would not take it whatsoever.  Many other times Defendant Abdullaev told him *"no, don't worry"* or *"oh shiizle, forget about it."*  Defendant Abdullaev was clear that he loved Mr. Mizrachi and that money was not a problem.

By June of 2019, Mr. Mizrachi and Defendant Abdullaev were very close and Mr. Mizrachi started helping Sarvar Azimzhanovich Abdullaev (herein referred to as "Defendant Sarvar"), Defendant Abdullaev's brother with their business Sleep and Beyond.  Defendant Sarvar needed help with how to generate internet sales.  In the opinion of Mr. Mizrachi, Defendant Sarvar had a good understanding of the internet but was not a top notch genius and definitely needed his help.  Mr. Mizrachi was more than happy to help the family since Defendant Abdullaev was spending so much of his time in the Weedmayhem business.

Additionally, in June of 2019, Defendant Abdullaev wanting so much to please Mr. Mizrachi introduced him to a man, Ilgar Hajiyev (herein referred to as

"Defendant Hajiyev").  Defendant Hajiyev was from Russia and was introduced to Mr. Mizrachi as a wealthy Russian businessman wanting to get into the cannabis delivery business.  Defendant Abdullaev thought that maybe Defendant Hajiyev might have serious money to invest and he would look like a hero to Mr. Mizrachi if he was able to find a big money investor.

By mid-July of 2019, Weedmayhem did not launch.  Money was tight and Defendant Hajiyev was still around.  He was talking about investing in Weedmayhem.  Mr. Mizrachi repeatedly told Defendant Hajiyev that "if this was ever to be, lawyers needed to be involved and it all needed to be done correctly for a sale of securities".  Mr. Mizrachi had an uneasy feeling about Defendant Hajiyev but let it pass as his focus was on making Weedmayhem a reality.

Shortly after the launch party and with things not going well Mr. Mizrachi was quite overwhelmed.  He spoke with Aboukloub about the problems.  Since Defendant Abdullaev had become such a close trusted friend and was deeply rooted in Weedmayhem, Mr. Mizrachi and Aboukloub put the trusted friend, Defendant Abdullaev in charge of the money.  He had access to all the funds.  This took the stress off of Mr. Mizrachi; he was free to focus on the development of the website and to get it launched. Defendant Abdullaev had the authority to cut checks or transfer money to those who need to be paid.  It was welcomed help.  And on occasion when Aboukloub's funding of the company was late, Defendant Abdullaev on a limited basis might loan the needed funds to Mr. Mizrachi.  Thus, if by chance Defendant Abdullaev advanced funds to Weedmayhem or to Mr. Mizrachi personally, he had the authority to reimburse himself when the funds became available in the bank account.

As time marched on and Weedmayhem did not launch, it still needed a big infusion of cash which it did not get and things started to fall apart.  Defendant Abdullaev would remind Mr. Mizrachi that Defendant Hajiyev could still be in the

-5-

picture.  He felt Defendant Hajiyev had money to invest.  Defendant Abdullaev was getting to know Defendant Hajiyev pretty well as Defendant Hajiyev in early August of 2019 leased office space in the same building (5670 Wilshire Boulevard, Los Angeles, CA) and same floor as Defendant Abdullaev and Defendant Sarvar (they had a Los Angeles business office for Sleep and Beyond in addition to their showroom in Fontana).  Obviously all three men were becoming more and more chummy.  They saw each other every day; they were just two doors away.  They talked about Mr. Mizrachi's company and how Defendant Hajiyev desired to be a part of it or maybe have it.

Mr. Mizrachi tried everything he could but in the end without capital he could do no more.  Obviously the strain of the daily disappointments of Weedmayhem took a toll on their bromance.  By approximately November of 2019, Mr. Mizrachi finally called it quits between the two of them, personally and with respect to the business.  There were many clean-up issues with the business, specifically financial and with no funds; Mr. Mizrachi did not feel Defendant Abdullaev should be tasked with dealing with lack of payments to vendors.  Mr. Mizrachi took responsibility for his company and dealt with the problems himself.  When the relationship was over, Defendant Abdullaev was devastated.  He reflected on the relationship.  He reached out to Mr. Mizrachi but Mr. Mizrachi was over it.  His hurt was apparent and his brother, Defendant Sarvar and Defendant Hajiyev were not happy to see how much pain Defendant Abdullaev was in.

Defendant Abdullaev could not accept it and in hurt lashed out.  Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev cooked up a plan to cause as much, if not more pain, to Mr. Mizrachi as he caused to Defendant Abdullaev. Defendant Sarvar told his brother about posting on the internet and how damaging it could be to a tech guy.  Defendant Hajiyev also promoted Defendant Abdullaev to post untruths about Mr. Mizrachi.  Defendant Abdullaev maliciously and

-6-

MIZRACHI COMPLAINT FOR: I. VIOLATION OF 47 USC § 230; II. FRAUD-INTENTIONAL MISREPRESENTATION; III. DEFAMATION-LIBEL; IV. DEFAMATION-LIBEL PER SE; etc. 3-26-2021

knowing the falsehood of his statements published false and defamatory statements about Mr. Mizrachi, Marina Mizrachi and Weedmayhem.  He published them on a website called *"Ripoff Report"* and another website called *"ScamGuard."*  His only reason for publishing such knowing falsehoods was that the bromance was over and he would do whatever he could do to hurt Mr. Mizrachi.  He knew what would hurt him the most and that is what he did.  Defendant Abdullaev spent almost two years side by side with Mr. Mizrachi.  If he felt, at all, what he wrote in the online posts were true, he would not have stayed, he would not have taken the chance to ruin his own reputation and potentially put himself in possible jeopardy of going to prison.  Pursuant to the allegations he made in his online rants, if true, he would be going to prison.  That is why it is clear Defendant Abdullaev does not believe his own publications; it was not done for the truth of the matter asserted but for another reason, to personally hurt Mr. Mizrachi and to gain back some respect from his family that is Muslim, while the Plaintiff's family is Jewish.

Wherefore, Plaintiffs pray for relief as set forth fully below.

## GENERAL ALLEGATIONS

1.     This Court has subject matter jurisdiction pursuant to United States Code §§§ 1331, 1343, and 1367 action pursuant to Title 47 and Title 18 of the United  States Code, § 230 and subject matter of Plaintiffs state claim arising out of California's common law pursuant to 28 U.S.C 1331, et. seq. for supplemental jurisdiction under the Declaratory Judgment Act.

2.     All the events described herein occurred in Los Angeles County, California.  Pursuant to Title 28 of the United States Code § 1931, venue is therefore appropriate here in the Central District Federal Court of California.

///

///

///

**PARTIES**

3.      Plaintiffs Michael Mizrachi and Marina Mizrachi are residents of Los Angeles and do business in this District (herein referred to as "Plaintiffs" and Michael Mizrachi herein referred to as "Mr. Mizrachi" and "Plaintiff").

4.      Plaintiff Weedmayhem, Inc. (herein referred to as "Weedmayhem") is a California Corporation that does business in this District.

5.      Defendant Sardor Azimovich Abdullaev (herein referred to as "Defendant Abdullaev") is a resident of Los Angeles and does business in this District.

6.      Defendant Sarvar Azimzhanovich Abdullaev (herein referred to as "Defendant Sarvar") is a resident of Los Angeles and does business in this District.

7.      Defendant Ilgar Hajiyev (herein referred to as Defendant Hajiyev") is a resident of Los Angeles and does business in this District.

8.      Defendant Vivatex is a company owned and operated by "Defendant Abdullaev and Defendant Sarvar" and is located in Kazakhstan.

9.      Defendant Xcentric Ventures, LLC an Arizona LLC, dba Badbusinessbureau.com dba RipoffReport.com is a company that publishes its website content both domestically and internationally (herein referred to as "Defendant Ripoff Report").

10.      Defendant ScamGuard.com is a company located in Walnut, California (herein referred to as "Defendant ScamGuard").

11.      Plaintiffs are informed, believe and thereon allege that all named defendants and Does 1-50 are, and each of them is, responsible for the acts alleged herein as the agents and employees of named defendants and believe and thereon allege that all defendants were, and each was, when doing the acts herein alleged, acting within the scope of their office, authority, agency and/or employment, in representative capacity and are therefore individually and collectively responsible for the acts complained of herein.

-8-

12.    This action is brought without prejudice to Plaintiffs rights to seek monetary compensatory damages in a subsequent action or Amendment to this Complaint once their right to be sued and Plaintiffs herein specifically reserves that right.

13.    This action is, at present, brought for injunctive relief, declaratory relief and punitive damages, declaratory relief for all published statements not protected by the First Amendment shall be removed and therefore the individual Defendants are proper defendants.  Furthermore, Plaintiffs allege that there is no immunity, qualified or otherwise where there is bad faith, willful conduct and/or erroneous content. *Armstrong v. Wilson* (9th Cir.1997) 124 F.3d 1019, 1026; *Pulliam v. Allen* (1984) 466 U.S. 522, 523; *Vidmar v. Williams* (N.D. Cal. 2005) 367 F.Supp.2d 1265. Defendants are hereby put on notice that any arguments that unsuccessfully raises these issues in a 12(b) (6) motion - which are based on the aforementioned cases and their precedent/progeny - will be commented on at trial as further evidence of bad faith in support of Plaintiffs request for punitive damages.

14.    Plaintiffs allege that Defendant Abdullaev was obsessed with desiring to be in Mr. Mizrachi's elite inner circle in Los Angeles, California.  This is what motivated Defendant Abdullaev to provide monetary and non-monetary benefits without even a hint of a discussion or a request for any contracts or agreements whether oral or written.

(A true copy of the numerous and relevant texts between Mr. Mizrachi and Defendant Abdullaev are attached as **Exhibit A**.)

### COMMON ALLEGATIONS TO ALL CAUSES OF ACTION

15.    Plaintiffs hereby incorporate the entirety of the above and below allegations as if fully set forth hereunder.

16.     At all times material, Mr. Mizrachi has a business and personal relationship with Defendant Abdullaev that escalated once Mr. Mizrachi divulged proprietary information about his business, Weedmayhem.

17.     As the months went on, Defendant Abdullaev became closer to Mr. Mizrachi.  Their relationship turned into a bromance.  Defendant Abdullaev was infatuated with Mr. Mizrachi and wanted to be with him, spend time with him and be with him on his Weedmayhem journey.  He told Mr. Mizrachi that he came from a family of great wealth, that they worked hard and had accomplished a lot.  Defendant Abdullaev told Mr. Mizrachi that his family owned a textile factory in Kazakhstan named Vivatex.  He also informed Mr. Mizrachi that his family owned a company here in the United States named Sleep and Beyond with a showroom in Fontana, California and a business office in Los Angeles, California.  That he was a college educated man and held the title of Founder of Sleep and Beyond.

18.     Defendant Abdullaev was very clear that he wanted to be a part of Weedmayhem and he insisted that he would be bringing value to the company.  Unfortunately, Defendant Abdullaev knew nothing of the internet business or the cannabis business, thus he was of little to no value at the current time.  But, Mr. Mizrachi knew after the launch of the website that his business needs would change and that Defendant Abdullaev might have the skills that he needed.  Therefore, Mr. Mizrachi let him hang around him.

19.     By March of 2019, Mr. Mizrachi had run into some cash flow problems.  A tech startup is very expensive and all the funds coming into the business from Aboukloub went to developers, designers and colorists, script writers for website segments, voiceover talent, legal, business overhead, etc., and a stipend for Mr. Mizrachi's living and family expenses.  Mr. Mizrachi was behind on a few bills.  Defendant Abdullaev, when he learned of this insisted in getting Mr. Mizrachi back in the black.  On March 24, 2019, two different credit cards were used to loan Mr. Mizrachi $23,700.00.  On March 28, 2019, the bank reversed the

charges and took the money back.  Mr. Mizrachi was obviously disappointed, but knew something else would come through and kept a positive attitude and an eye on the prize, Weedmayhem.

20.     Mr. Mizrachi saw how personally invested Defendant Abdullaev was in both himself and Weedmayhem.  On April 4, 2019, Mr. Mizrachi text Defendant Abdullaev that he was aware of how much work he was doing for him.  Mr. Mizrachi was a bit uncomfortable as he did not want a problem down the line with possible hurt feelings and he knew Defendant Abdullaev had essentially stopped working for his family's business.  Obviously this was not a traditional business relationship.  Defendant Abdullaev responded to the text by stating, *"All from the heart brother.  No compensation needed."*

21.     On or about April 7, 2019, Defendant Abdullaev had the credit cards run again for Mr. Mizrachi and everything went through, $23,700.00.  Mr. Mizrachi was so grateful and actually shocked at the generosity of Defendant Abdullaev.  Mr. Mizrachi expressed clearly to Defendant Abdullaev that he needed to pay Defendant Abdullaev back.

22.     On or about April 8, 2019, Mr. Mizrachi was worried that Defendant Abdullaev was too invested in him personally in his [Mr. Mizrachi's] hopes and dreams and he knew most likely nothing good would come of it.  Thus, he text Defendant Abdullaev and told him to *"focus on his own stuff [Sleep and Beyond work], you are doing a lot."*  Defendant Abdullaev text back that *"I haven't been this excited on anything in a long, long time brother."*  Mr. Mizrachi was flattered but wanted to make it clear that Defendant Abdullaev was to continue his own life and to not get so wrapped up into his.  He knew Defendant Abdullaev's feelings were much stronger for him than his were for Defendant Abdullaev; however there was love on both sides of this bromance.

23.     On or about May 15, 2019, Mr. Mizrachi went to a bedding show in southern California to see Defendant Abdullaev.  He went there with a $10,000.00

-11-

dollar check in his pocket.  Mr. Mizrachi wanted to start to pay off the credit card debt of $23,700.00.  Defendant Abdullaev would not hear of it.  He told him to go away.

24.     Later that evening Defendant Abdullaev went to Mr. Mizrachi's home for some socialization.  Then later that night in a text, Mr. Mizrachi said, *"Bro thanks for coming over tonight.  Let's please settle the credit card stuff tom[orrow].  And discuss it.  It is important to me."*  Defendant Abdullaev responded, *"Oh shiizle, forget about it."*

25.     Mr. Mizrachi continues to focus on his business.  As their relationship grows, Mr. Mizrachi has a soft spot for Defendant Abdullaev and on or about May 19, 2019, tells Defendant Abdullaev he can tell people he is the COO of Weedmayhem.  With that being said, Defendant Abdullaev will continue working for no money, without any equity in the company, without a contract or any agreement whatsoever.  The title was to show Defendant Abdullaev that he cared very much about their friendship.  It was for show, nothing more.

26.     Weedmayhem was now becoming more a reality.  The website was coming along well and Mr. Mizrachi had meetings with many people with a lot of money and interest in Weedmayhem, such as Mike Tyson (Tyson Ranch), Magic Johnson (Magic Johnson Enterprises), and Keith Kirkwood (LA City Council) just to name a few.  Mr. Mizrachi and Aboukloub thought a good way to get the name out and to show off Weedmayhem was to throw a big launch party at The Greek Theater in Los Angeles, California.  It was to be a party to beat all parties.  This vision of a launch party was thought up between Mr. Mizrachi and Aboukloub long before Mr. Mizrachi ever met Defendant Abdullaev.  The launch party was scheduled for July 13, 2019.

27.     On or about June 1, 2019, Defendant Abdullaev wanted to flex his muscles and show-off to Mr. Mizrachi so he gave him a Letter of Intent from his family's company in Kazakhstan, Vivatex.  The letter outlines how he will be

-12-

purchasing 10% of Weedmayhem for $13,000,000.00.  Defendant Abdullaev wanted to impress Mr. Mizrachi.  Mr. Mizrachi took the letter but never believed it.  However, for the sake of the friendship he never revealed his thoughts on the obvious foolishness, Defendant Abdullaev's actions, akin to a schoolboy crush.  The letter was never discussed again.  Mr. Mizrachi never desired to embarrass his close friend Defendant Abdullaev.

28.     Also, in June of 2019, because Mr. Mizrachi and Defendant Abdullaev were so close, Mr. Mizrachi agreed to help Defendant Abdullaev's brother, Defendant Sarvar, with their business Sleep and Beyond.  Defendant Sarvar needed help with how to generate internet sales.  In the opinion of Mr. Mizrachi, Defendant Sarvar had a good understanding of the internet but definitely needed his help.  Mr. Mizrachi was more than happy to help the family since Defendant Abdullaev was spending so much of his time in the Weedmayhem business.

29.     Furthermore, in June of 2019, Defendant Abdullaev wanting so much to please Mr. Mizrachi introduced him to a man, Defendant Hajiyev.  Defendant Hajiyev was from Russia and was introduced to Mr. Mizrachi as a wealthy Russian businessman wanting to get into the cannabis delivery business.  Defendant Abdullaev informed Mr. Mizrachi that Defendant Hajiyev might be a qualfied investor and that he would look like a hero for making the introduction.

30.     June and July of 2019, were hectic, busy months.  Lots and lots of people were coming in for all kinds of meetings.  Mr. Mizrachi was so busy he didn't know if he was coming or going.  He was talking to people on the east coast as well as people half way around the world.  The different time zones took a toll.  On or about June 18, 2019, Mr. Mizrachi in a text said, *"Hey bro. The credit card payment? Did u make it?  If so please tell me so I can give u cash tom.  At least for the minimum payment.  Zaid transferred some money to me so it should be in my account 1-2 days. We will pay down the card."*  Even on no sleep and many things in Mr. Mizrachi's head, he still wanted to honor his obligation to Defendant

-13-

Abdullaev and did not want to take advantage of their bromance.  Defendant Abdullaev responded, *"I paid $2500 in between two cards as minimums."*  And then went on to talk about Mr. Mizrachi's business with no desire to discuss any money owed.

31.     On or about July 10, 2019, Mr. Mizrachi, just three days before the big launch party text Defendant Abdullaev, *"Also, we need to change ur title. Now that we are going into real world.  And ur going to be giving out more cards. What title do u want? Your doing business development more than anything. We changing around all titles. Bonnie is printing cards order in 15 min. So call me if u want to discuss. But im not granting heather ur title at this time Eaither as me and u discussed."*  Defendant Abdullaev was not happy, he was hurt and he joked about what his new title should be, *"Chief of Custodian department[.] Cleaning up after everyone's mess."*  His desire was so strong to be with Mr. Mizrachi, he was willing to take a slap in the face, a punch in the gut, anything to stay next to him.

32.     On or about July 13, 2019, the launch party went off.  There were many complications and many problems, one big one, the lack of funding.  Aboukloub did not come through as agreed, he did his best, but that fell short of what was needed.  Things got out of hand and now Mr. Mizrachi and Weedmayhem were in debt and the website was not up and running.  Mr. Mizrachi was having trouble with the developers and things started to go downhill.

33.     Shortly after the launch party Mr. Mizrachi, Aboukloub and Defendant Abdullaev had a conversation regarding Weedmayhem.  The outcome was that Mr. Mizrachi needed to focus all his attention to getting Weedmayhem up and running.  That Defendant Abdullaev would be handling the business side of Weedmayhem, such as taking phone calls, cutting checks, and handling paperwork.  The men agreed that Aboukloub would wire money into an account that Defendant Abdullaev had access to and then Defendant Abdullaev would distribute accordingly.  Mr. Mizrachi was fine with that arrangement.

-14-

34. On or about July 24, 2019, Defendant Abdullaev could see the stress Mr. Mizrachi was in and he asked for Mr. Mizrachi's Well Fargo account number so he could put money in his account because he knew Mr. Mizrachi pays his mother's rent bill each month. Even under the tremendous stress Mr. Mizrachi was under, he declined the generous offer.

35. On or about July 26, 2019, Mr. Mizrachi gave Defendant Abdullaev a high-quality imitation Rolex watch. Defendant Abdullaev thanked Mr. Mizrachi for the beautiful watch. On or about July 28, 2019, Defendant Abdullaev writes, "Love you my guy." Mr. Mizrachi responds, "I love you." Even through difficult times, which both were experiencing, their relationship stayed strong.

36. Defendant Abdullaev and his brother Defendant Sarvar were going to go to a trade show in Las Vegas for the bedding industry. Defendant Abdullaev asked Mr. Mizrachi many, many times to go. Mr. Mizrachi was not so keen on the idea since he had no money to go and expressed it over and over. However, Defendant Abdullaev was quite persuasive by saying things like, we are going in the car, we are spending the money on gas anyway and the room is paid for whether you go or not you go, food is cheap in Vegas – I got your food if you don't have the funds. Mr. Mizrachi finally agreed to go on the trip. Defendant Abdullaev picked him up on or about July 28, 2019, and away they went. Mr. Mizrachi stayed with Defendant Abdullaev in Las Vegas for a couple of days. He went to the bedding show and hung around where they were staying. On or about July 31, 2019, Mr. Mizrachi booked a flight to Los Angeles and came home.

37. At the end of July Mr. Mizrachi leaves his apartment due to financial reasons. Before he makes a final decision on a smaller apartment he stays in a hotel for a couple of weeks. On or about August 6, 2019, Defendant Abdullaev books Mr. Mizrachi, his ex-wife and child a room at the Maison 120 for August 7-12, 2019. Mr. Mizrachi is quite grateful and requested that Defendant Abdullaev keep

1  account of all the money he was giving him.  He wanted to pay him back.

2  Defendant Abdullaev responds, *"Thank you is more than sufficient ♥."*

3        38.    Early in August of 2019, Defendant Abdullaev was getting to know

4  Defendant Hajiyev pretty well as Defendant Hajiyev leased office space in the same

5  building (5670 Wilshire Boulevard, Los Angeles, CA) and same floor as Defendant

6  Abdullaev and Defendant Sarvar have for their family business Sleep and Beyond,

7  it's their Los Angeles business office.  Obviously all three men were becoming

8  more and more chummy.  They saw each other every day; they were merely two

9  doors away.  They talked about Mr. Mizrachi's company and how Defendant

10  Hajiyev desired to be a part of it or maybe have it.

11        39.    On or about August 30, 2019, Defendant Abdullaev complains to Mr.

12  Mizrachi about the mess his life is in and texts Mr. Mizrachi, *"My car insurance*

13  *went up, bills pile up through the roof, credit score at its lowest, nobody using*

14  *lubrication these days, and you know what...................... I still love you."*  All

15  Defendant Abdullaev cared about was his relationship with Mr. Mizrachi, the rest

16  of his life was crashing in around him and all he could text was, *"I still love you."*

17        40.    On or about September 5, 2019, Defendant Sarvar sends a video to Mr.

18  Mizrachi expressing such glee because it was the first affiliate sale that they ever

19  had.  Mr. Mizrachi had been helping Defendant Sarvar for a little over three

20  months, on and off, regarding internet sales.  Defendant Sarvar was somewhat

21  knowledgeable about the internet but clearly not sophisticated enough to put an

22  internet campaign to drive traffic to the Sleep and Beyond site and generate sales.

23  Mr. Mizrachi was happy to hear his efforts worked and it generated sales, money,

24  for Sleep and Beyond.

25        41.    On or about September 15, 2019, Mr. Mizrachi needed to use a credit

26  card, the American Express, to charge $45.00 and although he was able to use

27  Defendant Abdullaev's credit card, he was still uncomfortable to charge even such

28  a small amount without permission.  He asked Defendant Abdullaev's permission,

-16-

he said, *"Yes, go ahead."*  The reason why this was not a problem was because the agreement between Aboukloub and Defendant Abdullaev was that if Defendant Abdullaev spent money for Mr. Mizrachi or Weedmayhem he could reimburse himself.  Thus, if Mr. Mizrachi uses Defendant Abdullaev's American Express, Defendant Abdullaev could go to the bank account and withdraw the funds needed for reimbursement.

42.    On or about September 17, 2019, the men were texting and Mr. Mizrachi text Defendant Abdullaev that he was officially broke and shared a picture of his bank account showing a negative $204.29 balance.  Defendant Abdullaev text back, *"Dam Bro."*  He goes on to let him know he will be sending him $300.00/$400.00 dollars and that he has to make it last, he is pulling it out of his IRA.  Mr. Mizrachi says, *"Thanks Daddy.  You are my sugar daddy."*  Defendant Abdullaev responded by sending a picture of the actor Dwayne Johnson "The Rock" wearing a sweet-shirt that reads, *"Call me big daddy."*  By September 25, 2019, Defendant Abdullaev text Mr. Mizrachi, *"Haven't even paid my own expenses for the past 5 months.  I'm becoming like you.  And forgetting myself."*  Mr. Mizrachi was shocked at hearing this and text back, *"Bro. Take care of ur things. We are all in this together."*  Defendant Abdullaev responded, *"I can't."*

43.    On or about September 29, 2019, Defendant Abdullaev and his wife were invited to Mr. Mizrachi's aunt's house for a holiday dinner, Rosh Hashanah. Defendant Abdullaev and his wife attended and he expressed how grateful he was to be there and that they [Mr. Mizrachi and Defendant Abdullaev] were opening new chapters and accomplishments together.  This was significant because Defendant Abdullaev is not Jewish, he is a devout Muslim.  This was the first time for Defendant Abdullaev ever attending such a gathering.

44.    On or about November 6, 2019, the business was almost shut down. Aboukloub had not sent any money for months and meeting with potential investors had slowed down.  The men were having personal problems, due to the pressure.

-17-

Defendant Abdullaev complains to Mr. Mizrachi that it is too much, that he is dodging bullets; people are calling asking for money and threatening lawsuits. It is clearly too much for Defendant Abdullaev. Mr. Mizrachi text back, *"Please make sure to forward me anyone who is reaching out to get paid relating to wm [Weedmayhem] expenses. I do not want you handling that anymore from here on. You do not need to be bothered with that. And I definitely don't want to hear about u "dodging bullets". It's my responsibility and i should handle it. Thank you. Im already directly with natalie from greek."*

45.     On or about November of 2019, Mr. Mizrachi sees that the relationship between the two of them was dwindling and it was much more difficult to communicate with Defendant Abdullaev. As noted above, November 6, 2019, Mr. Mizrachi had instructed Defendant Abdullaev to pretty much not handle phone calls or problems dealing with Weedmayhem. But unfortunately, Defendant Abdullaev just couldn't be so separated from Mr. Mizrachi. On or about November 8, 2019, Mr. Mizrachi was rather annoyed and text, *"Good afternoon. Natalie from the greek told me your reaching out to her.  Did you need something?  "Im dealing with them directly."*

46.     It was now becoming clear to Defendant Abdullaev that the relationship was over. He was torn up inside, very sad. On or about November 17, 2019, was the first time Defendant Abdullaev was asking for repayment of money. He texts, *"Any news on repayment bro? I'm behind everything. Let me know."* Mr. Mizrachi was surprised. The only thing he had of value would be shares in his company Weedmayhem. Defendant Abdullaev responded, *"I don't want your shares. Never agreed on that. Just gave you money when you needed."* Mr. Mizrachi responded, *"Okay. Then just reply and decline the share distribution. Good night."*

47.     On or about December 4, 2019, Defendant Abdullaev sent a letter via U.S. Mail, certified return receipt request, as well as emails to:

-18-

michael@wmmgrp.com, weedmayhemllc@gmail.com, mbmdirect@gmail.com.  In part, the letter stated that as of December 4, 2019, he [Defendant Abdullaev] is severing his business relationship with Mr. Mizrachi and demands $150,000.00 which he says was given to Mr. Mizrachi over time to build the Weedmayhem platform and the return of any documents that he signed.  This letter came out of the blue and Mr. Mizrachi could read between the lines that Defendant Abdullaev was deeply hurt that their personal relationship was over.  Mr. Mizrachi did not respond to such nonsense.

48.     On or about December 12, 2019, Mr. Mizrachi wanted to put the bitterness to rest.  He was genuinely cared about Defendant Abdullaev and Defendant Sarvar and their family.  He wrote an email to Defendant Sarvar in hopes to resolve any financial issues.  The text was, *"Savar, good afternoon. I hope your well. I hate to bother you with this, but let me know if you have a moment to meet and discuss this matter between my self and sardor before things escalate. Being a bigger man here,  i would like the opportunity to try and discuss things amicably since sardor has gotten way over his head with demands and trying to make claims that have been discussed otherwise. As much as i hate to involve you, sardor has made the situation very personal. For the sake of your families business and respect to your lovely mother, i would strongly recommend that we meet and talk like mature adults. I tried asking sardor to meet, i am yet to receive a reply. So i am giving it one last shot with you directly out of respect to you and your family. Please let me know if you wish to take some time to meet and chat. If not, thats okay too. Best..."*  Mr. Mizrachi received no response.

49.     On or about January 21, 2020, Defendant Abdullaev posted on *Ripoff Report* under the pseudonym Jason,

> *"Michael Bensimon Mizrachi and Marina Mizrachi are*
> *two criminals that act as a couple to fraud people with*

> their forged financial and other type of fake documents to
> make it seem they are successful entrepreneurs.  Micahel
> Mizrachi will write articles all over internet claiming to
> be Tech genius, Philanthropist, Venture capitalist, etc.
> ALL FAKE CLAIMS! This is where he acquired his latest
> scam, WEEDMAYHEM, and claimed to be the builder
> himself:            https://www.yo-kart.com/multivendor-
> marketplace-packages.html"

50.    On or about February 2, 2020, since Defendant Abdullaev did not get the attention he wanted from Mr. Mizrachi wrote a knowingly fraudulent statement on the website *ScamGuard*, wherein he stated that Mr. Mizrachi and his ex-wife,

> "They are professional crooks that have been scamming
> people for years with fake documents, forged bank
> statements, fake checks and much more.  Google: Michael
> Bensimon Mizrachi and there will be tons of lawsuits
> under the name for similar schemes.  Their latest scam is
> around the cannabis industry called WEEDMAYHEM
> which was a prebuilt platform they purchased from:
> www.yo-kart.com and pretended to be the ones who spent
> millions and more than 5 years to build.  All false and
> dirty lies.  Everything you read on WEEDMAYHEM is
> smoking mirrors as they wanted to become famous by
> using other people's money and lying to everyone that the
> platform is transactional.   BEWARE AS THESE ARE
> TOP-NOTCH PROFESSIONAL CON ARTISTS that know
> their job quite well and have been surviving by screwing
> many people for years squeezing everything out of them.

> *Please run a background check report or just google the full name as mentioned before."*

51. On or about February 3, 2020, again under the pseudonym Jason, Defendant Abdullaev posted on *ScamGuard* the following:

> *"CRIMINALS ON THE LOOSE! WARNING! BEWARE! Michael Bensimon Mizrachi (https://www.linkedin.com/in/michael-mizrachi-6ba7b1178?trk=public_profile_samename_profile_profile-result-card_result-card_full-click)*
>
> *and his accomplice Marina Mizrachi (AKA: Marina Kusheva) (https://www.instagram.com/unrealmarina/) are two criminals that act as a couple to FRAUD people with their forged financial and other type of fake documents to make it seem they are successful entrepreneurs. Michael Mizrachi will write articles all over internet claiming to be Tech genius, Philanthropist, Venture capitalist, Harvard graduate, creator of mutiple successfull internet conglomerates etc. ANYTHING YOU READ ABOUT HIM IS FAKE AND LIES! He is not a developer, coder or anything close! He had been scamming people and getting away with it for years. THIS GUY SHOULD BE IN JAIL! Please stay away and report them if you have been a victim to local police agencies or District Attorney. They have been sued many times and filed for bankruptcies to get away: https://www.cacb.uscourts.gov/sites/cacb/files/documents/opinions/LA-16-01215-RK_MizarchiStmt67.pdf*

-21-

*This   is   where   he   acquired   his   latest   scam,
WEEDMAYHEM, and claimed to be the builder himself:
https://www.yo-kart.com/multivendor-marketplace-
packages.html Please click on below links and BEWARE:
https://www.ripoffreport.com/reports/apumac-llc/los-
angeles-california-90048/michael-mizrachi-of-apumac-
llc-unfulfilled-promises-delay-partial-shipment-los-
angeles-1171809*

*https://www.ripoffreport.com/reports/michael-
mizrachi/los-angeles-california-/michael-mizrachi-mike-
and-i-agreed-upon-a-notarized-loan-i-had-known-him-
for-a-period-596064*

*https://www.resellerratings.com/store/Apple_In_Bulk."*

52.     Mr. Mizrachi was furious with the latest attention grabbing stunt from Defendant Abdullaev and could not let these absolutely false statements go without recourse.

53.     On or about January 1, 2019, Defendant Abdullaev was working without compensation on a very close personal friendship level with Mr. Mizrachi on the Weedmayhem venture to launch the first multi-vendor platform in the cannabis industry and when describing its vision, Mr. Mizrachi believed that *"Weedmayhem would be the Amazon for the cannabis industry."*

54.     Plaintiff alleges that Defendant Abdullaev earned his confidence and friendship by spending many hours with him and to further gain the confidence of Mr. Mizrachi, Defendant Abdullaev told Mr. Mizrachi that *"he came from a family of great wealth, that they worked hard and had accomplished a lot"* and that his

family owned a textile factory in Kazakhstan named Vivatex and a family owned business, Sleep and Beyond located in Fontana and Los Angeles, California.

55.     Plaintiff alleges that Defendant Abdullaev communicated that he wanted to be part of Weedmayhem notwithstanding that he had no prior work experience in the cannabis industry or with an online marketplace platform.

56.     Plaintiff alleges that he continued to trust Defendant Abdullaev on a personal level and offered to personally assist Mr. Mizrachi with his accounts payables by charging two of his personal credit cards in the amount of $23,700.00.

57.     At all times material, Plaintiff offered to pay back $23,700.00 charged to Defendant Abdullaev's credit cards.

58.     As Weedmayhem evolved into a new and exciting business, Defendant Abdullaev offered to buy 10% of Weedmayhem for $13,000,000.00 and gave Mr. Mizrachi a Letter of Intent secured by a company called, Vivatex. (A true copy is attached as **Exhibit B**.)

59.     On or about July 10, 2019, just three days prior to the major launch party in Los Angeles, California for Weedmayhem, Mr. Mizrachi offered to print business cards for Defendant Abdullaev that identified him as Business Development; that severely offended him.

60.     On July 13, 2019, the launch party wet off.  Lack of promised funding delayed the anticipated date for the launch of the website.  Trouble with developers, things went downhill and deteriorated quickly at this point with Weedmayhem.

61.     Shortly after the launch party Defendant Abdullaev, Mr. Mizrachi and Aboukloub had a conversation where the outcome was that the Defendant Abdullaev would be handling the business side of Weedmayhem and that Aboukloub would wire money into a bank account that Defendant Abdullaev had the authority to use.

62.     On or about July 24, 2019, Defendant Abdullaev deposited money in Plaintiff's bank account at Wells Fargo Bank on a friendship, bromance level

-23-

without even a hint of a discussion or a request for any contracts or agreements whether oral or written.

63.   On or about September 17, 2020, Plaintiff had no funds and on November 6, 2019, Weedmayhem was on the verge of closing as Aboukloub had not sent any financing in quite some time, potential investors had not materialized and Mr. Mizrachi and Defendant Abdullaev were having personal problems.

64.   On or about December 4, 2019, Defendant Abdullaev sent Mr. Mizrachi a letter that he was severing his business and personal relationship with Mr. Mizrachi and he demanded $150,000.00.  Plaintiff believed this to be tantamount to being blackmailed.

65.   On or about December 12, 2019, Mr. Mizrachi wrote an email to Defendant Sarvar to resolve all issues between all parties.  Defendant Sarvar so rudely refused to reply.

66.   On or about January 21, 2020, Defendant Abdullaev posted on *Ripoff Report* under the pseudonym of Jason published false and defamatory statements. (A true copy is attached as **Exhibit C.)**

67.   On or about February 2, 2020, Defendant Abdullaev posted additional false and defamatory statements on *ScamGuard*. (A true copy is attached as **Exhibit D**.)

68.   On or about February 3, 2020, again under the pseudonym Jason, Defendant Abdullaev posted on *ScamGuard* additional false and defamatory statements. (A true copy is attached as **Exhibit E**.)

### **FIRST CAUSE OF ACTION**

### **VIOLATIONS OF 47 USC § 230**

### **(Against Defendants: Xcentric Ventures, LLC an Arizona LLC, dba**

### **badbusinessbureau.com dba RipoffReport.com, and ScamGuard.com)**

69.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

-24-

70.     Plaintiffs allege that the above Defendants acted in bad faith and posted content that they knew was false on the internet to cause irreparable harm to Plaintiffs' reputation and ability to do business on whatsoever.

71.     Upon information and belief protections under § 230 of the Communications Decency Act are neither limitless nor provide Defendants immunity.

72.     Plaintiffs allege that both RipoffReport.com and ScamGuard.com published disparaging and false content about Plaintiffs not protected by the First Amendment. See *Hy Cite Corp. v. badbusinessbureau.com* 418 F. Supp. 2d 1142 (D. Ariz. 2005).

73.     Plaintiffs are informed, believe and thereon allege that Defendants conduct is malicious, oppressive and/or in reckless disregard of Plaintiffs' rights, justifying an award of punitive damages.

Wherefore, Plaintiffs pray for relief as set forth fully below.

## SECOND CAUSE OF ACTION

### FRAUD – INTENTIONAL MISREPRESENTATION

### (Against Defendant Abdullaev)

74.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

75.     Plaintiff alleges that Defendant Abdullaev made fraudulent misrepresentations to Mr. Mizrachi that he knew were false and it was solely made to induce and to acquire an interest in his company, Weedmayhem.

76.     On or about June 1, 2019, Defendant Abdullaev tendered a Letter of Intent from Vivatex in the amount of $13,000,000.00 for 10% of Plaintiff's Company, Weedmayhem.

77.     Defendant Abdullaev knew with reasonable certainty that his Letter of Intent was a worthless inducement.

78.     As a direct result of Defendant Abdullaev's conduct, Plaintiff is invoking the "benefit of the bargain" rule by satisfying his expectancy interest in the $13,000,000.00 Letter of Intent.

79.     Plaintiff requests that the Court award to him the difference in value between what Plaintiff received and what he was fraudulently induced to believe from Defendant Abdullaev. (*Stout v. Turney* (1978) 22 Cal.3d 718, 725.)

80.     Plaintiff is informed, believe and thereon alleges that Defendant Abdullaev's conduct, was malicious, oppressive and/or in reckless disregard of Plaintiff's rights, justifying an award of punitive damages.

Wherefore, Plaintiffs pray for relief as set forth fully below.

### THIRD FIRST CAUSE OF ACTION

### DEFAMATION – LIBEL

**(Against Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev)**

81.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

82.     Before the publication of the internet posts, Plaintiff was a respected member of the Los Angeles business community and well respected within the cannabis community.  Mr. Mizrachi conducted meetings with high profile business people discussing multimillion dollar partnerships with Weedmayhem, such companies were Tyson Ranch (Mike Tyson) and Magic Johnson Enterprises (Magic Johnson) to name a few.

83.     On or about January 2020 and February 2020, Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev went on a campaign to irretrievably damage Plaintiffs reputations by publishing knowingly false and defamatory statements about Plaintiffs on the websites *Ripoff Report* and *ScamGuard*. Defendant Sarvar was the mastermind of the conspiracy to destroy Mr. Mizrachi since he saw his brother so hurt by the rejection of Mr. Mizrachi.  Defendant Hajiyev disliked Mr. Mizrachi and Plaintiff clearly expressed to Defendant Hajiyev

-26-

in no uncertain terms he would have nothing to do with him.  Defendant Hajiyev did not take that well.  Defendant Sarvar and Defendant Hajiyev strongly encouraged Defendant Abdullaev to post false and defamatory statements about Plaintiffs.  Defendant Abdullaev was not very sophisticated when it came to the internet but his brother, Defendant Sarvar was somewhat experienced and thereafter Defendant Abdullaev posted, with the help of Defendant Sarvar and Defendant Hajiyev the false and defamatory statements.  An example of the false statements of fact that he published were (1) that Plaintiffs are criminals, (2) Plaintiffs have been scamming people for years with fake documents, forged bank statements and fake checks (3) Weedmayhem is a scam, and (4) anything you read about Plaintiffs are fake and lies.  Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev knew or had reason to know that all representations were false and published them with the intent to destroy Plaintiffs' reputations.

84.     As a result of Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev's publication of the unfounded allegations (1) Plaintiff has been unable to secure meetings for Weedmayhem with people he had once spoken to that expressed interest (2) Plaintiff has been unable to secure meetings with new people once Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev's publications were on the internet (3) Plaintiff's reputation as a tech startup entrepreneur has been adversely affected to the point he is losing clients he had with another business.

85.     As a direct and proximate result of Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev's unlawful conduct as alleged hereinabove, Plaintiffs have suffered economic harm and consequential damages in an amount to be determined according to proof at trial.

86.     Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev also acted with oppression, fraud, or malice as defined by California Civil Code §

3294 and engaged in highly reprehensible and despicable conduct warranting exemplary damages.

Wherefore, Plaintiffs pray for relief as set forth fully below.

## FOURTH CAUSE OF ACTION
## DEFAMATION – LIBEL PER SE
## (Against Defendant Abdullaev; Defendant Sarvar and Defendant Hajiyev)

87.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

88.     Before publication of the internet posts, Plaintiff was a respected member of the Los Angeles business community and well respected within the cannabis community.  Mr. Mizrachi conducted meetings with high profile business people discussing multimillion dollar partnerships with Weedmayhem, such companies were Tyson Ranch (Mike Tyson) and Magic Johnson Enterprises (Magic Johnson) to name a few.

89.     During the time period between January 1, 2020 and February 1, 2020, Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev engaged in a campaign and a willful pattern to damage Plaintiffs stellar reputations by publishing knowingly false and defamatory statements about Plaintiffs on the websites *Ripoff Report* and *ScamGuard*.  Defendant Sarvar was the mastermind of the conspiracy to destroy Mr. Mizrachi since he saw his brother so hurt by the rejection of Mr. Mizrachi.  Defendant Hajiyev disliked Mr. Mizrachi and Plaintiff clearly expressed to Defendant Hajiyev in no uncertain terms he would have nothing to do with him. Defendant Hajiyev did not take that well.  Defendant Sarvar and Defendant Hajiyev strongly encouraged Defendant Abdullaev to post false and defamatory statements about Plaintiffs.  Defendant Abdullaev was not very sophisticated when it came to the internet but his brother, Defendant Sarvar was somewhat experienced and thereafter Defendant Abdullaev posted, with the help of Defendant Sarvar and Defendant Hajiyev the false and defamatory statements.  An example of the false

-28-

statements of fact that he published were (1) that Plaintiffs are criminals, (2) Plaintiffs have been scamming people for years with fake documents, forged bank statements and fake checks (3) Weedmayhem is a scam, and (4) anything you read about Plaintiffs are fake and lies.  Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev knew or had reason to know that all representations were false and published them with the intent to destroy Plaintiffs reputations.

90.     As a result of Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev's intentional and willful publication of the unfounded statements Plaintiff's reputation, as a tech startup entrepreneur has been adversely affected to the point he is losing clients with all his businesses.

91.     As a direct and proximate result of Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev's unlawful conduct as alleged hereinabove, Plaintiffs have suffered economic harm and consequential damages in an amount to be determined according to proof at trial.

92.     Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev also acted with oppression, fraud, or malice as defined by California Civil Code § 3294 and engaged in highly reprehensible and despicable conduct warranting exemplary damages.

Wherefore, Plaintiffs pray for relief as set forth fully below.

## FIFTH CAUSE OF ACTION

### CASTING PLAINTIFFS IN A FALSE LIGHT

**(Against Defendant Abdullaev; Defendant Sarvar and Defendant Hajiyev)**

93.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

94.     Before the publication of the internet posts, Plaintiff was a respected member of the Los Angeles business community and well respected within the cannabis industry.  Mr. Mizrachi conducted meetings with high profile business

-29-

1   people discussing multimillion dollar partnerships between Weedmayhem and

2   Tyson Ranch (Mike Tyson) and Magic Johnson Enterprises (Magic Johnson).

3        95.    During the time period between January 2020 and February 2020,

4   Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev engaged in a

5   campaign and a willful pattern to damage Plaintiffs stellar reputations by publishing

6   knowingly false and defamatory statements about Plaintiffs on the websites *Ripoff*

7   *Report* and *ScamGuard*.  Defendant Sarvar was the mastermind of the conspiracy to

8   destroy Mr. Mizrachi since he saw his brother so hurt by the rejection of Mr.

9   Mizrachi.  Defendant Hajiyev disliked Mr. Mizrachi and Plaintiff clearly expressed.

10  Defendant Hajiyev did not take that well.  Defendant Sarvar and Defendant Hajiyev

11  strongly encouraged Defendant Abdullaev to post false and defamatory statements

12  about Plaintiff.  Defendant Abdullaev was not very sophisticated when it came to

13  the internet but his brother, Defendant Sarvar was somewhat experienced and

14  thereafter Defendant Abdullaev posted, with the help of Defendant Sarvar and

15  Defendant Hajiyev the false and defamatory statements.  An example of the false

16  statements of fact that he published were (1) that Plaintiffs are criminals, (2)

17  Plaintiffs have been scamming people for years with fake documents, forged bank

18  statements and fake checks (3) Weedmayhem is a scam, and (4) anything you read

19  about Plaintiffs are fake and lies.  Defendant Abdullaev and Defendant Sarvar and

20  Defendant Hajiyev knew or had reason to know that all representations were false

21  and published them with the intent to destroy Plaintiffs reputations.

     96.    All of those accusations would be highly offensive to any self-

22  respecting individual in American society, if not a reasonable person in Plaintiffs'

23  position.  No one would want to partner with anyone who is known to be a liar,

24  scammer, criminal and would never produce the venture that is at hand.  Obviously,

25  Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev published the

26  unfounded allegations to publicly discredit, humiliate and ruin Plaintiffs reputation.

28

97.     As a result of Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev's publication (1) Plaintiff has been unable to secure meetings for Weedmayhem with people he had once spoken to that expressed interest (2) Plaintiff has been unable to secure meetings with new people once Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev's publications of false content were on the internet and (3) Plaintiff's reputation as a tech startup entrepreneur has been adversely affected to the point he is losing clients with other businesses.

98.     As a direct and proximate result of Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev's unlawful conduct as alleged herein Plaintiffs have suffered economic harm and consequential damages in an amount to be determined according to proof at trial.

99.     Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev also acted with oppression, fraud, or malice as defined by California Civil Code § 3294 and engaged in highly reprehensible and despicable conduct warranting exemplary damages.

Wherefore, Plaintiffs pray for relief as set forth fully below.

# SIXTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against all Defendants)

100.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

101.   Before publication of the internet posts, Plaintiff was a respected member of the Los Angeles business community and well respected within the cannabis community.  Mr. Mizrachi conducted meetings with high profile business people discussing  multimillion dollar partnerships with Weedmayhem, such

-31-

1

2

companies were Tyson Ranch (Mike Tyson) and Magic Johnson Enterprises (Magic Johnson) to name a few.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

102.   During the period between January 2020 and February 2020, Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev engaged in a campaign and a willful pattern to damage Plaintiffs stellar reputations by publishing knowingly false and defamatory statements about Plaintiffs on the websites *Ripoff Report* and *ScamGuard*.  Defendant Sarvar was the mastermind of the conspiracy to destroy Mr. Mizrachi since he saw his brother so hurt by the rejection of Mr. Mizrachi.  Defendant Hajiyev disliked Mr. Mizrachi and Plaintiff clearly expressed to Defendant Hajiyev in no uncertain terms he would have nothing to do with him. Defendant Hajiyev did not take that well.  Defendant Sarvar and Defendant Hajiyev strongly encouraged Defendant Abdullaev to post false and defamatory statements about Plaintiff.  Defendant Abdullaev was not very sophisticated when it came to the internet but his brother, Defendant Sarvar was somewhat experienced and thereafter Defendant Abdullaev posted, with the help of Defendant Sarvar and Defendant Hajiyev the false and defamatory statements.  An example of the false statements of fact that he published were (1) that Plaintiffs are criminals, (2) Plaintiffs have been scamming people for years with fake documents, forged bank statements and fake checks (3) Weedmayhem is a scam, and (4) anything you read about Plaintiffs are fake and lies.  Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev knew or had reason to know that all representations were false and published them with the intent to destroy Plaintiffs' reputations.

23

24

25

26

27

103.   Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev knew or had reason to know that all these representations were false and had them published with the intent to destroy Plaintiffs' reputation and to humiliate and discredit the Plaintiffs by publishing false and defamatory statements as alleged herein.

28

104.   Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev knew of the economic potential of Weedmayhem and that the cannabis industry was growing at a rapid pace and that Weedmayhem would flourish if the company was adequately capitalized.  Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev knew these publications would destroy any chance of Plaintiff being able to obtain funding to move forward.

105.   Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev intentionally and wrongfully interfered with Plaintiff's prospective, beneficial economic relationship by publishing and causing false statements of fact to be communicated to the public.  In doing so, Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev intentionally and willfully interfered with Plaintiff's prospective economic advantages.

106.   In support of Plaintiff's damages, thereon or about September 2019, Carta Valuations LLC, a third party unrelated to Weedmayhem or Mr. Mizrachi, provided a 409A to Weedmayhem. (A true copy is attached as **Exhibit F**)  409A is an independent appraisal of the fair market value of a private company's common stock, or the stock reserved for founders and employees.  This valuation determines the cost to purchase a share.  Weedmayhem was given a share price by Carta Valuations of $1,148.80 or a total company valuation of $19,800,000.00.  Weedmayhem only owes under $750,000.00 (including $550,000 as a personal loan from a friend that only requested to be repaid if the company made a profit).  Therefore, Weedmayhem was positioned perfectly to find investors, to make it operational and to launch the website.  Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev knew or should have known the publications of false and defamatory statements would destroy Mr. Mizrachi's efforts in moving forward with Weedmayhem as well as other future endeavors.

107.    Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev's actions were intentional, willful and defamatory per se under California Civil Code § 45.

108.    Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev's conduct was intentional and willful to inflict harm to Plaintiff by impairing his ability to renew dialog with past and potential investors making it difficult and borderline impossible for Plaintiff to work in the local business community or in the cannabis industry.

109.    Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev acted with oppression, fraud, or malice as defined by California Civil Code § 3294 and engaged in reprehensible and despicable conduct warranting exemplary damages.

110.    As a proximate result of Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev's intentional interference with Plaintiff's prospective economic relationships Plaintiff has suffered (and will continue to suffer) actual, consequential, and/or incidental damages in the form of lost profits in an amount to be determined by proof at trial.

Wherefore, Plaintiffs pray for relief as set forth fully below.

## SEVENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev)**

111.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

112.    At all times material Plaintiff was a respected member of the Los Angeles business community and well respected within the cannabis community. Mr. Mizrachi conducted meetings with high profile business people discussing multimillion dollar partnerships with Weedmayhem, such companies were Tyson

-34-

Ranch (Mike Tyson) and Magic Johnson Enterprises (Magic Johnson) just to name a few.

113.   During the period of January 2020 and February 2020, Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev engaged in a campaign and a willful pattern to damage Plaintiffs stellar reputations by publishing knowingly false and defamatory statements about Plaintiffs on the websites *Ripoff Report* and *ScamGuard*.  Defendant Sarvar was the mastermind of the conspiracy to destroy Mr. Mizrachi since he saw his brother so hurt by the rejection of Mr. Mizrachi. Defendant Hajiyev disliked Mr. Mizrachi and Plaintiff clearly expressed to Defendant Hajiyev in no uncertain terms he would have nothing to do with him. Defendant Hajiyev did not take that well.  Defendant Sarvar and Defendant Hajiyev strongly encouraged Defendant Abdullaev to post false and defamatory statements about Plaintiffs.  Defendant Abdullaev was not very sophisticated when it came to the internet but his brother, Defendant Sarvar was somewhat experienced and thereafter Defendant Abdullaev posted, with the help of Defendant Sarvar and Defendant Hajiyev the false and defamatory statements.  An example of the false statements of fact that he published were (1) that Plaintiffs are criminals, (2) Plaintiffs have been scamming people for years with fake documents, forged bank statements and fake checks (3) Weedmayhem is a scam, and (4) anything you read about Plaintiffs are fake and lies.  Defendant Abdullaev and Defendant Sarvar and Defendant Hajiyev knew or had reason to know that all representations were false and published them with the intent to destroy Plaintiffs reputations.

114.   Since Defendant Abdullaev had just spent the better part of two years with Plaintiff, he knew what actions would cause the most harm, pain to Plaintiff. Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev acted with the intent to damage Plaintiffs and to cause Plaintiffs severe emotional and physical distress.

115.   Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev's conduct was extreme and outrageous.  Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev acted with reckless disregard for Plaintiffs' rights and feelings, with deliberate indifference to the certainty that Plaintiffs would suffer emotional distress.

116.   As a direct and proximate result of Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev's conduct, Plaintiffs have suffered severe emotional distress in the form of humiliation, mental anguish, anxiety, and alienation from the business communities, the cannabis communities and the general public at large. The willful and deliberate acts of Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev damaged Plaintiffs psychologically and medically.

117.   As a direct and proximate result of Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev's conduct, Plaintiffs have suffered general damages in an amount to be determined according to proof at trial.

118.   Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev Defendant Abdullaev, Defendant Sarvar and Defendant Hajiyev's conduct was done knowingly, willfully and with malice intent, and Plaintiffs are entitled to punitive damages in an amount to be determined according to proof at trial.

Wherefore, Plaintiffs pray for relief as set forth fully below.

## EIGHTH CAUSE OF ACTION
## DECLARATORY JUDGMENT
### (Against all Defendants)

119.   Plaintiffs hereby incorporate the entirety of the above and below allegations as if fully set forth hereunder.

120.   Plaintiffs seek a declaratory judgment from the Court as to each and every alleged cause of action in this Complaint and all Defendants have violated the Plaintiffs' civil rights under California and federal laws.

121.   An actual, present and justiciable controversy has arisen between the Plaintiffs and all Defendants, Plaintiffs seek a declaratory judgment from this Court based on the intentional and willful pattern of illegal conduct by all of the Defendants in violation of the United States Constitution.

122.   Plaintiffs seek a declaratory judgment under *Rule 57, F.R.C.P*. as the existence of another remedy does not preclude a declaratory judgment in favor of the Plaintiffs that is appropriate as it will terminate the controversy whether the constitutional rights of the Plaintiffs were violated by all Defendants.

123.   Plaintiffs request relief for a declaratory judgment as a summary proceeding to prevent a miscarriage of justice.

124.   Additionally, Plaintiffs request that this Court issue a declaratory judgment in favor of the Plaintiffs *sua sponte* as permitted under Rule 57.

Wherefore, Plaintiffs pray for relief as set forth fully below.

### IRREPARABLE HARM

Plaintiffs hereby alleges that an Application for a Temporary Restraining Order will be filed on the basis that they have a strong likelihood of success on the merits as well as will suffer irreparable harm if the requested injunctive relief is denied pursuant to Federal Rule Civ. Proc. 65(b).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following:

A.   Damages, including general and special damages, in an amount to be determined at trial;

B.   Punitive damages;

C.   Prejudgment interest;

D.   Costs to the extent provided by law, including attorney's fees and costs as provided by statute;

E.   Declaratory Judgment; and

F.   Any order of further relief as the Court deems just and proper.

-37-

1

2

3

4          DATED:  March 26, 2021                s/s Marc Applbaum

5                                                Marc Applbaum, Esq.
                                                 MIDWAY LAW FIRM APC
6                                                Attorney for Plaintiffs
                                                 Michael Mizrachi, Marina Mizrachi,
7                                                Weedmayhem, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2

3         Plaintiffs demand a jury trial of all triable issues.

4

5         DATED:  April 1, 2021

6                                             /s/ Marc Applbaum
                                              Marc Applbaum, Esq.
7                                             MIDWAY LAW FIRM APC
                                              Attorneys for Plaintiffs
8                                             Michael Mizrachi, Marina Mizrachi,
                                              Weedmayhem, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MIZRACHI COMPLAINT FOR: I. VIOLATION OF 47 USC § 230; II. FRAUD-INTENTIONAL
MISREPRESENTATION; III. DEFAMATION-LIBEL; IV. DEFAMATION-LIBEL PER SE; etc. 3-26-2021

1

**VERIFICATION**

2      I, Michael Mizrachi am the Plaintiff in the above Complaint. Upon

3  information and belief, I avow that the facts herein are within my knowledge and to

4  the contents thereof.  The same is true of my knowledge, except as to those matters

5  which are therein alleged on information and belief, and as to those matters are

6  believed to be true.

7      I declare under penalty of perjury that the foregoing allegations are true and

8  correct and that this Verification was executed in San Diego, California.

9

10      DATED:  April 1, 2021          /s/ Michael Mizrachi
                                     Michael Mizrachi
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-40-